IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 18-cv-02103-MSK-NYW

KIMBERLY JESUALE,

    Plaintiff,

v.

BUELL MANSION OWNERS ASSOCIATION, INC.,
ROGER HURSH,
RICHARD KOENIG,
DEBORAH KOENIG,
DONALD OELSNER,
JEREMY RAMP, and
KELLY BARTON,

    Defendants.

---

## OPINION AND ORDER DENYING MOTION FOR
## TEMPORARY RESTRAINING ORDER

---

**THIS MATTER** comes before the Court pursuant to Ms. Jesuale's *pro se*[1] Motion for Temporary Restraining Order **(# 2)**.

Ms. Jesuale's Complaint **(# 1)** is somewhat rambling, but the pertinent facts are ascertainable. In or about 2014, she and her then-husband, Defendant Donald Oelsner,

---

[1] Although Ms. Jesuale represents herself in this matter and would ordinarily be entitled to liberal construction of her pleadings as a result, *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972), her Complaint indicates that she is a graduate of the University of Michigan School of Law and was, at some point, licensed as an attorney (although she is "not actively barred"). The courtesy of construing *pro se* pleadings liberally need not be extended to licensed attorneys. *Mann v. Boatright*, 477 F.3d 1140, 1148 n. 4 (10th Cir. 2007). Nevertheless, the Court observes that the outcome of this Order does not turn on whether Ms. Jesuale's pleadings are granted liberal construction.

1

purchased a home in the Buell Mansion Neighborhood, a community governed by a homeowner's association (Defendant Buell Mansion Owners Association, Inc., hereafter "the Association"). Ms. Jesuale, who suffers from a variety of disabilities and relies upon a service dog, intended to construct a fence around the back yard of the property. The Association's guidelines permitted the building of fences upon the consent of adjoining neighbors. Much of Ms. Jesuale's Complaint relates her frustrations in dealing with her neighbors and the Association concerning obtaining permission for the construction of the fence, but because those events are not pertinent herein, the Court will not address them in detail. It is sufficient to observe that Ms. Jesuale and Mr. Oelsner did eventually construct a fence, the Association brought litigation against them relating to the fence, and Mr. Olsner apparently agreed to settle with the Association by removing the fence.

Based on these facts, and others, Ms. Jesuale appears to assert three claims against some or all of the named Defendants: (i) discrimination in housing on the basis of disability in violation of 42 U.S.C. § 3604(f) and C.R.S. § 24-34-502.2, in that the Defendants' resistance to the construction of a fence deprived Ms. Jesuale of the privileges of property ownership because of her disability and deprived her of reasonable accommodations for that disability; (iii) criminal conspiracy in violation of 18 U.S.C. § 241 (and perhaps a civil conspiracy in violation of 42 U.S.C. § 1985), in that the Defendants "conspired to illegally deprive [her] of her marital property and her civil rights claims against the Association and her neighbors and her marital asset of the values of the fence, the marital property with the fence, the landscaping, and the associated attorney's fees"; and (iii) promissory estoppel, apparently under Colorado common law, in that the Association's guidelines and representations promised her that she could build a

fence on the property, and that she relied upon those representations by agreeing to purchase the property.

In January 2017, Mr. Olsner filed for divorce from Ms. Jesuale in the Colorado District Court for Arapahoe County. The divorce is clearly contentious, although again, the Court need not dwell on particular details recited by Ms. Jesuale. At some point in time the Arapahoe County court authorized Mr. Olsner to sell the couple's home.[2] In July 2018, Mr. Olsner entered[3] into a contract of sale to sell the house, and Ms. Jesuale alleges that the sale was intended to close on August 15, 2018. She contends that, due to her informing the buyers of her intention to file this suit against Mr. Olsner and others, the buyers postponed the closing of that sale to an undetermined date in the future. Ms. Jesuale has filed a Motion for Temporary Restraining Order **(# 3)**, and although the specific nature of the relief she requests is somewhat unclear, it appears to the Court that she is asking for an injunction preventing Mr. Olsner from completing the sale of the property. She states, variously, that the sale is "illegal[ ] under federal and state civil rights and criminal laws" and "laws that give jurisdiction to this court," that "the marital property . . . is irreplaceable and selling it violates [Ms. Jesuale's civil rights]," and that she will be "asking for the property to be awarded to her as partial satisfaction of her prayer for relief" in the underlying action.

---

[2] Ms. Jesuale alleges, among other things, that the Arapahoe County court's decision was made "without determining whether or not the property in dispute is marital property," without determining the fair-market value of the property, and that the court required Mr. Olsner to comply with certain unspecified "conditions" on the sale which Ms. Jesuale alleges Ms. Olsner violated.

[3] There is a pregnant ambiguity in Ms. Jesuale's pleadings as to whether the property is titled jointly to her and Mr. Olsner, or whether Mr. Olsner is the sole titled owner of the property. The answer to this question could have substantial ramifications on Ms. Jesuale's standing to bring some or all of the claims she asserts herein. The Court notes that the Contract to Buy and Sell Real Estate, attached to Ms. Jesuale's instant motion, lists only Mr. Olsner as the owner of the property.

To obtain an *ex parte* temporary restraining order, Ms. Jesuale must first comply with Fed. R. Civ. P. 65(b)(1). That rule requires her to: (i) demonstrate, via affidavit or verified complaint, facts that show that she will suffer irreparable harm before the defendants can be heard in opposition, Fed. R. Civ. P. 65(b)(1)(A); and (ii) certify in writing any efforts that the she has made to give the defendants notice of the motion and the reasons why such notice should not be required, Fed. R. Civ. P. 65(b)(1)(B). In addition, Ms. Jesuale must also make a sufficient showing as to the traditional elements for provisional injunctive relief: (i) that there is an imminent and irreparable harm that she will suffer if the injunction is not granted; (ii) a substantial likelihood that she will prevail on the merits of her claims; (iii) the balance of the equities favors the granting of the request; and (iv) that the injunction would not be contrary to the public interest.[4] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

Without making particular findings, the Court will assume that Ms. Jesuale has satisfied the requirements of Rule 65(b), and the Court turns to the traditional injunction elements. The Court finds that Ms. Jesuale has failed to show a likelihood of success on any claim that would, as a remedy, entitle her to retain possession of the property. It is Mr. Olsner who is the

---

[4] The Court has some concerns that the injunction Ms. Jesuale requests is one that "alters the *status quo*," as is thus disfavored. The "*status quo*" is defined as the "last peaceable uncontested status existing between the parties before the dispute developed." *Schrier v. Univ. of Colorado,* 427 F.3d 1253, 1258 (10th Cir. 2005). Here, Ms. Jesuale contends that she brought the instant motion as soon as she discovered the pending sale of the property, but she has not indicated when she first learned that the Arapahoe County court authorized Mr. Olsner to sell the property to someone, if not necessarily the specific buyers herein. It may be that the Arapahoe County court's authorization of a sale is the *status quo*, and Ms. Jesuale's requested injunction would alter that situation. Where a disfavored injunction is requested, the factors listed above are "closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course" and require a "strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *O Centro Espirita Beneficienty Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975-76 (10th Cir. 2004). Ultimately, the Court finds that Ms. Jesuale cannot satisfy the ordinary injunction factors, and thus, the Court need not consider whether her request seeks a disfavored injunction or not.

ostensible owner of the property, the person attempting to effectuate its sale, and thus, the only person who would be enjoined if Ms. Jesuale's request is granted. Thus, the Court looks specifically to the claims that Ms. Jesuale has asserted against Mr. Olsner, not to the claims she asserts against other Defendants. It would appear that Ms. Jesuale's housing discrimination claims are not asserted against Mr. Olsner: her articulation of that claim references "Defendants Hursh, Debra and Roger Koenig, and the Association" as parties subject to that claim. And Ms. Jesuale's promissory estoppel claim cannot be asserted against Mr. Olsner, as she makes clear that Mr. Olsner also relied on the Association's promises when deciding to purchase the property.

That leaves only Ms. Jesuale's conspiracy claim asserted against Mr. Olsner, and the contours of that claim are decidedly unclear. She alleges that Mr. Olsner "secretly entere[d] into negotiations and a settlement" with the Association "over the fence issue," apparently agreeing to remove the fence in order to resolve the Association's lawsuit against him. Ms. Jesuale contends that, by doing so, Mr. Olsner "unilaterally estopp[ed her] from pursuing her civil rights claims through federal agencies . . . and [from] being able to safely use and enjoy her property." To allege a claim for a civil conspiracy under 42 U.S.C. § 1985, Ms. Jesuale must allege facts showing that Mr. Olsner entered into an agreement with others to either "participate in an unlawful act, or a lawful act in an unlawful manner." *See Halberstram v. Welch,* 705 F.2d 472, 477 (D.C. Cir. 1983). The sole act that Mr. Olsner is alleged to have performed – the removal of a fence from his own property that he had previously constructed – is neither unlawful nor allegedly accomplished in an unlawful way. Thus, it is highly unlikely that Ms. Jesuale will succeed on her conspiracy claim against Mr. Olsner and, thus, she is not entitled to a preliminary injunction against him pending resolution of that claim.

Moreover, even assuming that Ms. Jesuale's claim against Mr. Olsner was stronger, the Court would still refuse to grant her an injunction prohibiting Mr. Olsner's sale of the property; rather, the Court would abstain from hearing that request on *Younger* grounds. The doctrine of *Younger* abstention suggests that where there are ongoing state judicial proceedings that concern an important state interest – such as domestic relations – and the state proceedings offer the plaintiff an adequate opportunity to litigate the federal issues identified in the plaintiff's federal lawsuit, the federal court should refrain from hearing claims that would interfere with those state proceedings. *Thompson v. Reno*, 728 Fed.Appx. 796 (10th Cir. 2018). To the extent that federal law gives Ms. Jesuale some say in how the property is maintained (or disposed of), it does not appear that there is any impediment to her asserting those federal rights in the Arapahoe County divorce proceedings. *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1292 (10th Cir. 1999). Thus, the Court would abstain under *Younger* from hearing Ms. Jesuale's request to displace the Arapahoe County court's order permitting sale of the property in any event.

Accordingly, the Court **DENIES** Ms. Jesuale's Motion for Temporary Restraining Order **(# 3)**. Moreover, for the reasons stated herein, the Court would also deny any request by Ms. Jesuale for a preliminary injunction based on the same facts and theories, and thus, to the extent her motion can be construed to request a preliminary injunction, it is denied as well.

Dated this 20th day of August, 2018.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge